**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

MALIBU MEDIA, LLC

        Plaintiff,

v.

JOHN DOE subscriber assigned IP address 73.165.251.74

        Defendant.

Civil No. 2:15-cv-05232-TJS

## PROPOSED ORDER

AND NOW, this _____ day of _____, _____ upon consideration of Defendant's Motion to Quash Subpoena and Motion for a Protective Order, and any responses thereto, it is hereby ORDERED AND DECREED that:

Defendant's Motion to Quash the Subpoena and Motion for Protective Order are Granted.

                                              BY THE COURT:

                                        _____ J.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MALIBU MEDIA, LLC | |
|                Plaintiff, | Civil No. 2:15-cv-05232-TJS |
| v. | |
| JOHN DOE subscriber assigned IP address 73.165.251.74 | |
|                Defendant. | |

## MOTION TO QUASH SUBPOENA AND MOTION FOR A PROTECTIVE ORDER

Defendant John Doe, by and through the undersigned counsel, files this Motion to Quash Subpoena and Motion for a Protective Order pursuant to Federal Rules of Civil Procedure 26 and 45 and argues as follows:

### I. INTRODUCTION AND BACKGROUND

1. On September 18, 2015, Plaintiff Malibu Media, LLC filed suit in the Eastern District of Pennsylvania against unnamed and unidentified Defendant John Doe subscriber assigned to IP address 73.165.251.74.

2. On or about September 30, 2015, Doe received a letter from the Internet Service Provider ("ISP"), Comcast, informing her that the ISP had received a subpoena seeking to compel the disclosure of documents identifying Doe's name, address and Media Access Control.

3. Malibu alleges that Doe violated the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.*, by downloading and sharing over the internet a single zip file containing movies allegedly owned by Malibu, including titles as *Cum In Get Wet* and *Tie Her Up for Me* (Compl. Ex. B.).

4. Malibu alleges that its investigator, IPP International UG, "downloaded one or more bits of each of the digital media files" from Doe, (Compl. ¶ 20), and used "proven IP address

1

geolocation technology "to trace the internet activity to a Comcast account in this District. (Compl. ¶ 6).

5. Malibu also alleges that "Defendant's Internet Service Provider can identify the Defendant," (Compl. ¶ 11) and issued a Third Party Subpoena pursuant to Fed. R. Civ. P. 26(d)(1) on Comcast to discover the identity of the individual to whom IP address 73.165.251.74 is registered.

6. BitTorrent is a peer-to-peer ("P2P") file sharing protocol that allows users to transfer large files over the internet by breaking the files into smaller parts. See *Patrick Collins, Inc. v. Doe 1*, 288 F.R.D. 233 (E.D.N.Y. 2012), *Next Phase Distribution, Inc. v. John Does 1-27*, 284 F.R.D. 165 (S.D.N.Y 2012), *In re BitTorrent Adult Film Copyright Infringement Cases*, 296 F.R.D. 80 (E.D.N.Y. 2012). Peers using the BitTorrent protocol are able to see the alleged IP address of other Peers to whom they are connected or from whom the file was downloaded. *Id.*

## II. MOTION TO QUASH SUBPOENA AND MOTION FOR A PROTECTIVE ORDER

### A. No "Good Cause"

7. A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempt from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order." Fed. R. Civ. P. 26(d)(1). The Court can order earlier discovery if the party seeking discovery shows "good cause." *Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 326 (S.D.N.Y. 2005). The following factors frame the "good cause" inquiry in cases of online copyright infringement:

> (1) [the] concrete]ness of the plaintiff's] showing of a *prima facie* claim of actionable harm,...(2) [the] specificity of the discovery request, ... (3) the absence of alternative means to obtain the subpoenaed information,...(4) [the] need for the subpoenaed

2

information to advance the claim,…and (5) the [objecting] party's expectation of privacy. *Arista Records, LLC v. Doe 3*, 604 F.3.d 110, 119 (2d Cir. 2010) (quoting *Sony Music Entm't v. Does 1-40*, 326 F. Supp. 2d 556, 564-65 (S.D.N.Y. 2004)).

8. Malibu has not met the burden to show an exception of "good cause" under Rule 26.

9. Malibu has not established a prima facie copyright infringement claim against Doe.

10. A *prima facie* copyright infringement claim consists of two elements: (1) ownership of the valid copyright, and (2) copying of constituent elements of the work that are original. *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.* 499 U.S. 3400, 361 (1991).

11. Assuming Malibu has a valid copyright in the obscene movies cited, Malibu has not established a violation by the individual to whom the relevant IP address is registered. As Judge Oetken explains, the fact that a copyrighted work was illegally downloaded from a certain IP address does not necessarily mean that the owner of that IP address was the infringer. Indeed, the true infringer could just as easily be a third party who had access to the internet connection, such as a son, daughter, houseguest, neighbor, or customer of a business offering internet connection." *Patrick Collinc, Inc. v. Does 1-6*, No. 12-cv-2964, 2012 WL 2001957, at *1 (S.D.N.Y. June 1, 2012) (internal citations omitted); see also In re BitTorrent Adult Film Copyright Infringement Cases, 296 F.R.D. 80, 84 (E.D.N.Y. 2012) ("The assumption that the person who pays for internet access at a given location is the same individual who allegedly downloaded a single explicit film is a tenuous one, and one that has grown more so over time.").

12. United States District Judge Harold Baker of the Central District of Illinois denied a motion for expedited discovery and reconsideration, holding that, "IP subscribers are not necessarily copyright infringers…The infringer might be the subscriber, someone in the subscriber's household, a visitor with her laptop, a neighbor, or someone parked on the street at any given moment." Order of Apr. 29, 2011, *VPR International v. Does 1-1017*, No. 2:11-cv-

3

02068 (Central District of Illinois) (Judge Harold A. Baker). The point made by Judge Baker was that there may or may not be a correlation between the individual subscriber, the IP address, and the infringing activity. *Id.*

13. The risk of misidentification is ever increasing as it becomes easier to copy or falsify an IP address.

14. A group of engineers in the University of Washington conducted an experimental analysis of the monitoring of BitTorrent network protocols. See *Challenges and Directions for Monitoring P2P File Sharing Networks – or – Why my Printer Received a DMCA Takedown Notice*, The University of Washington, available at http://dmca.cs.washington.edu/, last visited on October 21, 2015. The study concluded that copyright holders use inconclusive methods for identifying infringing BitTorrent users. *Id.* Most importantly, the study found that the IP addresses of innocent users could be identified as an infringer despite having never downloaded content or even used P2P sharing. *Id.*

15. Today it is far too common for malicious users or "buggy software" to implicate any IP address in a copyright infringement case. *See generally Id.*

16. The risk of false identification and false accusations through disclosure of the identity of the internet subscriber is also presented here.

17. In a nearly identical case, after filing a complaint that was virtually identical to the complaint in this case, Judge Alvin K. Hellerstein of the Southern District of New York entered an order denying Malibu's motion for leave to serve a subpoena on Time Warner Cable finding that Malibu failed to establish a *prima facie* case. *See Malibu Media v. John Doe Subscriber assigned IP Address 66.108.67.10*, 1:15;cv-04369-AKH (S.D.N.Y. July 2015).

18. The likelihood that an individual, other than Doe, infringed Plaintiff's copyrights is too great to support any correlation between Doe and the alleged violation Plaintiff seeks to prove.

19. Further, Malibu states in its Complaint that its software downloaded one or more bits of each file hash listed as an exhibit to the Complaint. However, as Judge Hellerstein explains, "even if Plaintiff could definitively trace the BitTorrent activity in question to the IP-registrant, Malibu conspicuously fails to present any evidence that John Doe either uploaded, downloaded, or even possessed a complete copyrighted video file." *Id.*

20. "Another District Court has noted that 'Individual BitTorrent files pieces are worthless... If it is the case that a Doe Defendant logged onto the BitTorrent swarm, downloaded and then uploaded a single piece to the IPP server, and then logged off, all he has done is transmitted and unusable fragment of the copyright it work... [T]he Court notes that Malibu's case is weak if all it can prove is that the Doe Defendants transmitted only part of all the BitTorrent pieces of the copyrighted work." *Id. citing Malibu Media, LLC V. John Does 1-10*, No. 12-cv-3623, 2012 WL 5382304, at *3 (C.D. Cal. June 27, 2012).

21. Further, we have no evidence that there is no alternative means of obtaining the desired information.

22. For the reasons stated above, Malibu has failed to establish "good cause" and Doe respectfully requests that this Court grant this Motion to Quash the Third Party Subpoena.

### B. Undue Burden

23. A court must modify or quash a subpoena that fails to allow a reasonable time to comply; requires a non-party to travel more than 100 miles (except for trial within the state); requires disclosure of privileged materials; or, subjects a person to undue burden. See Fed. R. Civ. P. 45(d)(3)(A)(i-iv).

5

24. If the mere act of having an internet address can link a subscriber to copyright infringement suits, innocent internet subscribers such as Doe will face untold reputational injury, harassment, embarrassment and expense.

25. IP addresses are copied or falsified for numerous purposes. A simple internet search of how to spoof an IP address will turn up article after article about the ease of which to change or hide your IP address...and that's just for the novice.

26. Unfortunately, empirical studies show that the field of copyright litigation is increasingly being overtaken by "copyright trolls," roughly defined as plaintiffs who are more focused on the business of litigation than on selling a product or service or licensing their copyrights to third parties to sell a product or service." Mathew Sag, *Copyright Trolling, An Empirical Study*, 100 Iowa L. Rev. 1105, 1108 (2015). "The pragmatic troll plays a numbers game in which it targets hundreds or thousands of defendants, seeking quick settlement priced just low enough that it is less expensive for the defendant to pay the troll rather than defend the claim." *Id.* This is especially dangerous in the context of pornography.

27. In previous cases Malibu has argued that it will not oppose a motion for a protective order, and that it is not a "Copyright Troll."

28. The Honorable Judge Timothy Black of the Southern District of Ohio surveyed some of Malibu's questionable conduct in litigations across the country. *See Order to Show Cause, ECF Doc. No. 15, Malibu Media, LLC v. Ryan Ramsey*, No. 14-cv-718 (S.D. Ohio May 26, 2015). He stated that while "Malibu Media asserts that it is necessary to invoke the Court's subpoena power to 'propound discovery in advance of a Rule 26(f) conference'...[,] not a single one of these 60 cases [filed in this district over the previous 12 months] has even progressed to a Rule 26(f) conference. *Id.* at 5.

29. Even in cases where the court attempts to place restrictions on Malibu to prevent Malibu from using the process to extort innocent Does, Malibu has flagrantly disregarded them, releasing Does' personal information to the public. *See Order to Show Cause*, ECF Doc. No. 17, *Malibu Media, LLC v. Austen Downs*, 14-cv-707 (S.D. Ohio May 26, 2015).

30. Here, the risk of undue burden in the form of public embarrassment and the reputational injury to a Doe from public exposure and association with movies, including titles as *Cum In Get Wet* and *Tie Her Up for Me*, among 125 other titles which Malibu attached to its Complaint, is too great and presents an undue burden on Doe under Fed. R. Civ. P. 45(c)(3)(A)(iv).

31. Malibu counts on the fact that in a desperate attempt to avoid the public exposure, the innocent defendant may be coerced into an unjust settlement.

32. Therefore, Doe respectfully requests this Court Quash Malibu's Third Party Subpoena.

### C. Protective Order

33. Under Fed. R. Civ. P. 26(c), the Court may, for good cause, issue an order to protect a party or person from "annoyance, embarrassment, oppression, or undue burden or expense."

34. Good cause exists for a protective order to prevent the disclosure of Doe's identifying information because disclosure of Doe's identifying information would subject Doe to the annoyance, public embarrassment, oppression and undue burden as explained above.

35. Doe respectfully requests this Court issue a protective order pursuant to Fed. R. Civ. P. 26(c) or modify the subpoena accordingly.

### III. CONCLUSION

36. Malibu has failed to show "good cause" for the expedited discovery as it could not establish its prima facie claim of copyright infringement or its claim that there is no alternative

means of obtaining the desired information. Malibu's Third Party Subpoena unduly burdens Doe with the threat of public embarrassment and essentially forced settlement tactics it uses.

WHERFORE, for the foregoing reasons, Defendant, John Doe subscriber assigned IP address 73.165.251.74 requests this Honorable Court enter an Order Granting this Motion and

1. QUASHING the outstanding subpoena

2. ENTERING a protective order preventing Plaintiff from obtaining further discovery as to Defendant; and

3. FOR SUCH OTHER AND FURTHER RELIEF that this Court deems appropriate.

Respectfully Submitted,

THE SAULER LAW OFFICE LLC

Dated: 10/21/15

*Tracy Sauler*

Tracy R. Sauler, Esquire
The Sauler Law Office LLC
1019 S. 8th Street, Suite 4
Philadelphia, PA 19147
PA Bar No. 311193
Tel. 215-644-7388

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

MALIBU MEDIA, LLC

        Plaintiff,                      Civil No. 2:15-cv-05232-TJS

v.

JOHN DOE subscriber assigned IP address
73.165.251.74

        Defendant.

## DEFENDANT'S BREIF IN SUPPORT OF DEFENDANT'S MOTION TO QUASH SUBPOENA AND MOTION FOR A PROTECTIVE ORDER

Defendant John Doe, by and through the undersigned counsel, files this Motion to Quash Subpoena and Motion for a Protective Order pursuant to Federal Rules of Civil Procedure 26 and 45 and argues as follows:

### I.    INTRODUCTION AND BACKGROUND

On September 18, 2015, Plaintiff Malibu Media, LLC filed suit in the Eastern District of Pennsylvania against unnamed and unidentified Defendant John Doe subscriber assigned to IP address 73.165.251.74. On or about September 30, 2015, Doe received a letter from the Internet Service Provider ("ISP"), Comcast, informing her that the ISP had received a subpoena seeking to compel the disclosure of documents identifying Doe's name, address and Media Access Control.

Malibu alleges in its Complaint that Doe violated the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.*, by downloading and sharing over the internet a single zip file containing copyrights allegedly owned by Malibu, including titles as *Cum In Get Wet* and *Tie Her Up for Me* (Compl. Ex. B.). Malibu alleges that its investigator, IPP International UG, "downloaded one or more bits of each of the digital media files" from Doe, (Compl. ¶ 20), and used "proven IP address

1

geolocation technology "to trace the internet activity to a Comcast account in this District. (Compl. ¶ 6). Malibu also alleges that "Defendant's Internet Service Provider can identify the Defendant," (Compl. ¶ 11) and issued a Third Party Subpoena pursuant to Fed. R. Civ. P. 26(d)(1) on Comcast to discover the identity of the individual to whom IP address 73.165.251.74 is registered.

BitTorrent is a peer-to-peer ("P2P") file sharing protocol that allows users to transfer large files over the internet by breaking the files into smaller parts. See *Patrick Collins, Inc. v. Doe 1*, 288 F.R.D. 233 (E.D.N.Y. 2012), *Next Phase Distribution, Inc. v. John Does 1-27*, 284 F.R.D. 165 (S.D.N.Y 2012), *In re BitTorrent Adult Film Copyright Infringement Cases*, 296 F.R.D. 80 (E.D.N.Y. 2012). Peers using the BitTorrent protocol are able to see the alleged IP address of other Peers to whom they are connected or from whom the file was downloaded. *Id.*

## II.    MOTION TO QUASH SUBPOENA AND MOTION FOR A PROTECTIVE ORDER

### A. No "Good Cause"

A party "may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempt from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order." Fed. R. Civ. P. 26(d)(1). The Court can order earlier discovery if the party seeking discovery shows "good cause." *Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 326 (S.D.N.Y. 2005). The following factors frame the "good cause" inquiry in cases of online copyright infringement:

> (1) [the] concrete[ness of the plaintiff's] showing of a *prima facie* claim of actionable harm,…(2) [the] specificity of the discovery request, … (3) the absence of alternative means to obtain the subpoenaed information,…(4) [the] need for the subpoenaed information to advance the claim,…and (5) the [objecting] party's expectation of privacy.

2

*Arista Records, LLC v. Doe 3*, 604 F.3.d 110, 119 (2d Cir. 2010) (quoting *Sony Music Entm't v. Does 1-40*, 326 F. Supp. 2d 556, 564-65 (S.D.N.Y. 2004)).

Malibu has not met the burden to show an exception of "good cause" under Rule 26. Malibu has not established a *prima facie* copyright infringement claim against Doe. A *prima facie* copyright infringement claim consists of two elements: (1) ownership of the valid copyright, and (2) copying of constituent elements of the work that are original. *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.* 499 U.S. 3400, 361 (1991).

Assuming Malibu has a valid copyright in the obscene movies cited, Malibu has not established a violation by the individual to whom the relevant IP address is registered. As Judge Oetken explained, "the fact that a copyrighted work was illegally downloaded from a certain IP address does not necessarily mean that the owner of that IP address was the infringer. Indeed, the true infringer could just as easily be a third party who had access to the internet connection, such as a son, daughter, houseguest, neighbor, or customer of a business offering internet connection." *Patrick Collinc, Inc. v. Does 1-6*, No. 12-cv-2964, 2012 WL 2001957, at *1 (S.D.N.Y. June 1, 2012) (internal citations omitted); see also In re BitTorrent Adult Film Copyright Infringement Cases, 296 F.R.D. 80, 84 (E.D.N.Y. 2012) ("The assumption that the person who pays for internet access at a given location is the same individual who allegedly downloaded a single explicit film is a tenuous one, and one that has grown more so over time."). United States District Judge Harold Baker of the Central District of Illinois denied a motion for expedited discovery and reconsideration, holding that, "IP subscribers are not necessarily copyright infringers…The infringer might be the subscriber, someone in the subscriber's household, a visitor with her laptop, a neighbor, or someone parked on the street at any given moment." Order of Apr. 29, 2011, *VPR International v. Does 1-1017*, No. 2:11-cv-02068 (Central District of

3

Illinois) (Judge Harold A. Baker). The point made by Judge Baker was that there may or may not be a correlation between the individual subscriber, the IP address, and the infringing activity. *Id.*

The risk of misidentification is ever increasing as it becomes easier to copy or falsify an IP address. Even if an ISP subscriber secures the wireless Internet connection with a password there are various vulnerabilities that could be exploited to gain access to it. A group of engineers in the University of Washington conducted an experimental analysis of the monitoring of BitTorrent network protocols. See *Challenges and Directions for Monitoring P2P File Sharing Networks – or – Why my Printer Received a DMCA Takedown Notice*, The University of Washington, available at http://dmca.cs.washington.edu/, last visited on October 21, 2015. The study concluded that copyright holders use inconclusive methods for identifying infringing BitTorrent users. *Id.* Most importantly, the study found that the IP addresses of innocent users could be identified as an infringer despite having never downloaded content or even used P2P sharing. *Id.* Today it is far too common for malicious users or "buggy software" to implicate any IP address in a copyright infringement case. *See generally Id.* The risk of false identification and false accusations through disclosure of the identity of the internet subscriber is also presented here.

In a similar case, after filing a complaint that was virtually identical to the complaint in this case, Judge Alvin K. Hellerstein of the Southern District of New York entered an order denying Malibu's motion for leave to serve a subpoena on Time Warner Cable finding that Malibu failed to establish a *prima facie* case. *See Malibu Media v. John Doe Subscriber assigned IP Address 66.108.67.10*, 1:15;cv-04369-AKH (S.D.N.Y. July 2015). The likelihood that an individual, other than Doe, infringed Plaintiff's copyrights is too great to support any correlation

4

between Doe and the alleged violation Plaintiff seeks to prove. Further, Malibu states in its Complaint that its software downloaded one or more bits of each file hash listed as an exhibit to the Complaint. However, as Judge Hellerstein explains, "even if Plaintiff could definitively trace the BitTorrent activity in question to the IP-registrant, Malibu conspicuously fails to present any evidence that John Doe either uploaded, downloaded, or even possessed a complete copyrighted video file." *Id.* "Another District Court has noted that 'Individual BitTorrent files pieces are worthless... If it is the case that a Doe Defendant logged onto the BitTorrent swarm, downloaded and then uploaded a single piece to the IPP server, and then logged off, all he has done is transmitted and unusable fragment of the copyright it work... [T]he Court notes that Malibu's case is weak if all it can prove is that the Doe Defendants transmitted only part of all the BitTorrent pieces of the copyrighted work." *Id.* citing *Malibu Media, LLC V. John Does 1-10*, No. 12-cv-3623, 2012 WL 5382304, at *3 (C.D. Cal. June 27, 2012).

Further, we have no evidence here that there is no alternative means of obtaining the desired information. For the reasons stated above, Malibu has failed to establish "good cause" and Doe respectfully requests that this Court grant this Motion to Quash the Subpoena and Motion for a Protective Order.

### B. Undue Burden

A court must modify or quash a subpoena that fails to allow a reasonable time to comply; requires a non-party to travel more than 100 miles (except for trial within the state); requires disclosure of privileged materials; or, subjects a person to undue burden. *See* Fed. R. Civ. P. 45(d)(3)(A)(i-iv). If the mere act of having a particular internet address can link a subscriber to copyright infringement suits, innocent internet subscribers such as Doe will face untold reputational injury, harassment, embarrassment and expense. IP addresses are copied or falsified

for numerous purposes. A simple internet search of how to spoof an IP address will turn up article after article about the ease of which to change or hide your IP address...and that's just for the novice.

Unfortunately, empirical studies show that the field of copyright litigation is increasingly being overtaken by "copyright trolls," roughly defined as plaintiffs who are more focused on the business of litigation than on selling a product or service or licensing their copyrights to third parties to sell a product or service." Mathew Sag, *Copyright Trolling, An Empirical Study*, 100 Iowa L. Rev. 1105, 1108 (2015). "The pragmatic troll plays a numbers game in which it targets hundreds or thousands of defendants, seeking quick settlement priced just low enough that it is less expensive for the defendant to pay the troll rather than defend the claim." *Id.* This is especially dangerous in the context of pornography.

In previous cases Malibu has argued that it will not oppose a motion for a protective order, and that it is not a "Copyright Troll." The Honorable Judge Timothy Black of the Southern District of Ohio surveyed some of Malibu's questionable conduct in litigations across the country. *See Order to Show Cause, ECF Doc. No. 15, Malibu Media, LLC v. Ryan Ramsey*, No. 14-cv-718 (S.D. Ohio May 26, 2015). He stated that while "Malibu Media asserts that it is necessary to invoke the Court's subpoena power to 'propound discovery in advance of a Rule 26(f) conference'...[,] not a single one of these 60 cases [filed in this district over the previous 12 months] has even progressed to a Rule 26(f) conference. *Id.* at 5. Even in cases where the court attempts to place restrictions on Malibu to prevent Malibu from using the process to extort innocent Does, Malibu has flagrantly disregarded them, releasing Does' personal information to the public. *See Order to Show Cause*, ECF Doc. No. 17, *Malibu Media, LLC v. Austen Downs*, 14-cv-707 (S.D. Ohio May 26, 2015). Here, the risk of undue burden in the form of public

embarrassment and the reputational injury to a Doe from public exposure and association with movies, including titles as *Cum In Get Wet* and *Tie Her Up for Me*, among 125 other titles which Malibu attached to its Complaint, is too great and presents an undue burden on Doe under Fed. R. Civ. P. 45(c)(3)(A)(iv). Malibu counts on the fact that in a desperate attempt to avoid the public exposure, the innocent defendant may be coerced into an unjust settlement. Therefore, Doe respectfully requests this Court Quash Malibu's Third Party Subpoena.

### C. Protective Order

Under Fed. R. Civ. P. 26(c), the Court may, for good cause, issue an order to protect a party or person from "annoyance, embarrassment, oppression, or undue burden or expense." Good cause exists for a protective order to prevent the disclosure of Doe's identifying information because disclosure of Doe's identifying information would subject Doe to the annoyance, public embarrassment, oppression and undue burden as explained above. Doe respectfully requests this Court issue a protective order pursuant to Fed. R. Civ. P. 26(c) or modify the subpoena accordingly.

### III. CONCLUSION

Malibu has failed to show "good cause" for the expedited discovery as it could not establish its *prima facie* claim of copyright infringement or its claim that there is no alternative means of obtaining the desired information. Malibu's subpoena unduly burdens Doe with the threat of public embarrassment and essentially forced settlement tactics it uses.

WHERFORE, for the foregoing reasons, Defendant, John Doe subscriber assigned IP address 73.165.251.74 requests this Honorable Court enter an Order Granting this Motion and:

1. QUASHING the outstanding subpoena

2. ENTERING a protective order preventing Plaintiff from obtaining further discovery as to Defendant; and

3. FOR SUCH OTHER AND FURTHER RELIEF that this Court deems appropriate.

Respectfully Submitted,

THE SAULER LAW OFFICE LLC

Dated: 10/21/15

*Tracy Sauler*
Tracy R. Sauler, Esquire
The Sauler Law Office LLC
1019 S. 8th Street, Suite 4
Philadelphia, PA  19147
PA Bar No. 311193
Tel. 215-644-7388

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

MALIBU MEDIA, LLC

        Plaintiff,

v.

JOHN DOE subscriber assigned IP address
73.165.251.74

        Defendant.

Civil No. 2:15-cv-05232-TJS

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Motion was sent by first class mail, postage prepaid to Plaintiff's counsel, Christopher P. Fiore, Esquire, Fiore & Barber, LLC, at 418 Main Street, Suite 100, Harleysville, PA 19438 on October 21, 2015 with a copy to Comcast via facsimile to 1-866-947-5587.

THE SAULER LAW OFFICE LLC

Dated: 10/21/15

Tracy R. Sauler, Esquire
The Sauler Law Office LLC
1019 S. 8th Street, Suite 4
Philadelphia, PA 19147
PA Bar No. 311193
Tel. 215-644-7388